UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


KATHY WOOD, *ET AL.*         )
                                    )

V.                            )        NO. 2:11-CV-213
                                    )

COCKE COUNTY, TENNESSEE,    )
*ET AL.*                           )


## MEMORANDUM OPINION

The plaintiffs own lots in a subdivision in Cocke County, Tennessee, known as Valley View Estates, which was developed by Ricky Bryant. The roads in Valley View Estates have never been accepted by Cocke County; they are private roads as far as Cocke County is concerned. As a result, Cocke County has never maintained those roads.

Plaintiffs' suit alleges that the roads within Valley View Estates should have been accepted as county roads long ago. They claim that the defendants' actions in declining to accept the roadways into the county road system constitutes a deprivation of substantive due process and a violation of their right to equal protection under the law. They seek redress for these claimed constitutional violations under 42 U.S.C. § 1983. They also request a declaratory judgment that the roadways have been adopted into the county road system by virtue of the use made of the roads by the public and the defendants. Lastly, they seek substantial monetary damages from the developer, Ricky Bryant.

All defendants, save for Ricky Bryant, have moved for summary judgment. (Doc. 43).

As an initial matter, a judgment by default in favor of all four plaintiffs in the amount

of $558,845.00 has been filed against the defendant, Ricky Bryant.[1] Also, the Cocke County Legislative Body is not a legal entity, and neither is the Cocke County Highway Commission. The actions of the individuals comprising either of these bodies are of course actions of Cocke County,

As regards the defendant Ford, described in the complaint as the "County Highway Administrator," the plaintiffs did not state in their complaint if they were suing him in his official or individual capacity. Therefore, it is presumed that he is sued in his official capacity, *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), as a result of which his inclusion as a defendant is redundant and unnecessary, *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159 (1985). Accordingly, the only remaining viable defendant is Cocke County, Tennessee.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there are no genuine issues regarding any material facts and, based upon those undisputed facts, the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The moving party has the initial burden of proving that there are no genuine issues of material facts and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 47 U.S. 317 (1986)*; Street v. J.C.Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). If the moving party meets that

---

[1]This default judgment was entered before the remaining parties consented to the magistrate judge.

In 2011, Mr. Bryant was convicted in this court for bank robbery, and sentenced to 100 months' confinement in federal prison.

burden, the non-material moving party then has the burden of producing evidence that demonstrates the existence of a fact, or a dispute concerning a material fact, that precludes summary judgment. The court must draw all possible favorable inferences in favor of, and construe the evidence in the light most favorable to, the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). However, the evidence in favor of the non-moving party must be enough to support a jury verdict in that party's favor. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson, supra*, at 2511.

## FACTS

As can be seen in their respective Statements of Facts, Documents 45 and 59, there is little dispute about those facts. To the extent that a fact is in dispute, the court will rely upon the version favorable to the plaintiff.

In 1962, Cocke County adopted regulations regarding county roads. Those regulations were brief and rather simple: no road would be adopted as a county road until it was properly tiled and ditched, with a minimum three inches of base stone, twenty-four-feet wide, and a right-of-way fifty feet wide granted by all the property owners who would be affected by the absorption of the road into the county system.[2]

In the mid-to late- 1990s, Ricky Bryant began developing Valley View Estates. The

---

[2]Doc. 59-2.

plat for Phase I of the subdivision was recorded in the Register's Office for Cocke County on July 1, 1997; the plat for Phase II was recorded on September 23, 1998; and the plat for Phase III was recorded on February 4, 2000.

In May 2000, John Holloway was appointed to fill out the unexpired term of road superintendent. He was thereafter elected to two successive four-year terms, leaving office in 2010.

In 2000 or 2001, the plaintiff Mark Blask purchased a lot in Valley View Estates from Ricky Bryant.

On February 28, 2002, the plat for Phase IV of Valley View Estates was recorded. The certification signed by Superintendent Holloway read:

> I certify that streets and related appurtenances installed, or proposed for installation, fully meet the specifications established by the Regional Planning Commission and, if not installed, that acceptable surety has been posted with the Cocke County Regional Planning Commission in compliance with Article IV, L in the amount of $__ __.

Holloway also noted in the margin on the recorded plat that "[t[he roads in this sub-division are not County Maintained."

In 2002, Mark and Jessica Blask placed a double wide trailer on their lot and began residing in Valley View Estates, at which time the roads (which were graveled, not paved) were "mostly good."

In October 2004, Cocke County adopted a new and more detailed procedure for

4

accepting new roads into the county system.[3]

In 2006, the plaintiffs Lawton and Kathy Wood purchased a home and lot in Valley View Estates from Bryant. The contract between the Woods and Bryant required Bryant to "maintain reasonable access to [Woods'] property until [the roads became] the responsibility of the Cocke County Road Department."[4] At that time, the roads were in "good" to "very good" condition. Bryant's realtor told the Woods' realtor that the roads "should be taken in [by the county] at any time."

Both the Blasks and the Woods knew at the time they purchased their properties that the county was not responsible for maintaining the roads within the subdivision. Nevertheless, they believed that the roads eventually would be accepted as county roads based on assurances by Ricky Bryant and then-Road Superintendent Holloway.

In November 2006, after the Woods moved into their house, Ricky Bryant told them that he was in contact with Road Superintendent Holloway and that Holloway had assured him that the process was underway to take the Valley View Estates roads into the county system. Superintendent Holloway told Kathy Wood that he had talked to Bryant; that "they" were working on it; and that the roads were "coming in, not to worry."

In 2007, the graveled roads had degraded to the point that some residents "chipped in and re-graveled" where needed.

Kathy and Lawton Wood permitted a sign to be erected on or near their property

---

[3]Document 59-2, Ex. 2 to Holloway's deposition.

[4]Doc. 59-7.

5

which reads, "Private Rd. - Resident Maintained Road," and which has been in place for three or more years.

The roads in Valley View Estates have been used by the Cocke County Sheriffs Department, the fire department, emergency personnel, and other "public services."

At various times, one or another of the plaintiffs spoke with individual members of the County Planning Commission, Highway Commission, or County Legislative Body, formally and informally, regarding the condition of the subdivision roads. On four separate occasions between 2006 and 2009, Superintendent Holloway told Kathy Wood that the subdivision roads "were in the process of being brought into the County road system," and that he would make sure that would occur."

In the Spring of 2009, Kathy Wood reminded Superintendent Holloway of his promise to bring the Valley View Estates roads into the county system. Superintendent Holloway responded that she should not worry, and he knew "how to take care of it."

In February 2010, Superintendent Holloway advised the Cocke County Highway Commission that residents of Applewood Estates, another development of Ricky Bryant, had complained about the conditions of their roads. A few weeks later, the Commission voted to recommend to the County Legislative Body that the roads in Applewood Estates be adopted as county roads, not withstanding that those roads did not meet the required specifications for county roads. In return, a lawsuit brought by an Applewood Estates resident would be dismissed.

On March 15, 2010, the County Legislative Body agreed with the recommendation

6

of the Highway Commission and voted to accept the Applewood Estates roads.

On March 29, 2010, the County Legislative Body and the Planning Commission held a joint meeting regarding the county's previous adoption of the roads in Applewood Estates. One of the Planning Commissioners expressed "his concerns for approving roads that are sub-standard by standards of the Planning Commission." Nevertheless, the County Legislative Body did not retreat from its previous action regarding those roads. Several weeks later, the Applewood Estates lawsuit was dismissed.

In April 2010, a resident of Valley View Estates called the Sheriffs Office, complaining that logging trucks were damaging the roads. The sheriff responded. [Plaintiffs' Statement of Facts asserts that the sheriff "intervened on behalf of the loggers," but that assertion (1) is not supported by the sheriff's deposition testimony, (2) is conclusory, and (3) is irrelevant].

In September 2010, Superintendent Holloway had been replaced by Kenneth Ford as Road Superintendent. In his deposition, Ford testified that the 2004 regulations regarding adoption of roads by the county had been largely ignored and a majority of roads taken into the county system during Holloway's tenure were not "legal," i.e., did not meet specifications. Ford also testified that the Applewood Estates roads did not meet the specifications when they were adopted as county roads.

In October 2010, Ricky Bryant was arrested on federal charges for bank robbery, and he has been in custody ever since.

In February 2011, a double wide trailer in Valley View Estates was destroyed by fire.

7

Due to the poor condition of the roads, fire trucks could not reach the trailer, although the trailer would have been destroyed even if fire trucks had been able to reach it.

Also in March 2011, the plaintiffs appeared before the Cocke County Highway Commission to request that the roads in Valley View Estates be taken into the county road system. Superintendent Ford stated that the county could not legally work on the roads in Valley View Estates but, if the roads were brought up to specifications, the Commission would recommend their acceptance.

On April 26, 2011, the plaintiffs appeared before the Highway Commission, again requesting that the roadways in Valley View Estates be taken into the county system. When the county's earlier action in accepting the roadways in Applewood Estates was broached, Commissioner Kenny Hall stated that the Appelwood Estates roads were accepted "because of an on-going lawsuit involving the City Planning Commission."

In May 2011, the Cocke County Highway Commission approved and adopted new procedures and specifications regarding the adoption of roads into the county system. Superintendent Ford expressed his opinion to the Planning Commission that these "new rules will pretty much prevent taking in any older roads."

## *ANALYSIS*

As previously stated, plaintiffs advance three claims against Cocke County: (1) that the county's refusal to incorporate the roads of Valley View Estates into the county road system has denied the plaintiffs substantive due process; (2) that the county has denied

8

plaintiffs equal protection of the law; and (3) the county by its actions has tacitly accepted the roads into its system.

Each of these theories will be discussed in turn.

*SUBSTANTIVE DUE PROCESS*

The due process clause of the Fourteenth Amendment has two components: procedural and substantive. As far as the substantive component is concerned,

> [i]t serves as a vehicle to limit various aspects of potentially oppressive government action. For example, it can serve as a check on legislative enactments thought to infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking," hence oppressive, as to rise to the level of a substantive due process violation.

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996).

To give rise to a substantive due process violation, the right violated must be fundamental, *Howard, supra*. Substantive due process "performs only those protections 'so rooted in the commissions and conscience of our people as to be ranked as fundamental.'" *Michael H. v. Gerald D*., 491 U.S. 110 (1989) (plurality opinion) (quoting *Snyder v. Massachusetts*, 291 U.S. 97 (1934). Of course, not every right is a *fundamental* right.

Plaintiffs argue that they have a right to county-maintained roads. One of course could argue that the plaintiffs have a "right" to county maintained roads since they pay taxes to the county. But many people own cabins, chalets, and even manor houses which are served only by private roads, and no one reasonably could argue that they are entitled to

9

publicly-created and maintained roads solely on account of the fact that they pay taxes. But even if a person has a "right" to have his residence served by a publicly-constructed and maintained road, is that right *fundamental*?

As plaintiffs point out, "arbitrary and capricious" actions by a government can give rise to a substantive due process claim. However, "arbitrary and capricious" is a phrase of art in a substantive due process analysis, and it must arise to "conscience shocking in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). In *Hussein v. City of Perrysburg*, 617 F.3d 828 (6th Cir. 2010), the court said:

> Not all arbitrary and capricious state action amounts to a violation of substantive due process; "otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act." [citation omitted]. Interests protected by substantive due process "include those protected by specific constitutional guarantees, . . . freedom from government actions that shock the conscience, and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." [citation omitted].

617 F.3d at 833.

Thus, do the facts as stated above constitute such an egregious arbitrary and capricious action on the part of the county that one's conscience is shocked? Again, is the plaintiffs' right to publicly-constructed and maintained road a fundamental right?

Courts have held that zoning issues do not implicate fundamental rights, *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994); that there is no fundamental right to snow removal or *street maintenance*, *Pheasant Run Condo. Homes Ass'n. v. City of Brookfield*, 580 F.Supp.2d 735, 739 (E.D. Wisc. 2008); that there is no fundamental right to

fire protection, *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir. 1984); and that there is no fundamental right to municipal water service, *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991). In the aggregate, these cases indicate that these plaintiffs do not have a fundamental right to have the streets in Valley View Estates included in the county system of roadways and thereafter maintained by the county.

Sometimes a right is created by state law, but "whether a substantive interest created by the state rises to the level of a constitutionally protected property is a question of federal constitutional law." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir. 1995). Plaintiff has cited the Tennessee Supreme Court case of *Foley v. Hamilton*, 659 S.W.2d 356 (Tenn. 1983), arguing that the Tennessee Supreme Court held therein that the state legislature intended that "adequate streets will be provided when property is subdivided," and that purchasers of lots in a subdivision have a reasonable expectation that the roads in the subdivision will be public roads maintained by the county. *Id.* at 360. *Foley*, however, is clear that the responsibility of getting roads into the public domain is upon the developer:

> We are of the opinion that these statutes impose a duty upon *developers* of recorded subdivisons and regional planning zones to obtain acceptance of the roads by a county highway department. That duty, together with the reasonable expectation that purchasers of property in a recorded regional subdivision, absent any statutory scheme, that the roads therein will be public roads maintained by the county, create an implied contractual obligation *on the part of the developer* to take all steps necessary to obtain county acceptance of the roads within such a subdivision.
>
> The duty of a county to repair roads does not arise until roads are accepted.

649 S.W.2d at 360 (Italics supplied).

11

There is nothing in the *Foley* opinion that could be read as creating a right to publicly-maintained roads on the part of a landowner in a subdivision that could be said to be "fundamental."

Next, plaintiffs insist that the county's retroactive application of the 2004 and 2011 regulations to the Valley View Estates roads was arbitrary and capricious, and thus a denial of substantive due process. However, Ricky Bryant certainly *could* have brought the roads in Valley View Estates into compliance with the pre-2004 regulations, but he did not. Having failed to bring the roads up to the pre-2004 specifications, no one reasonably can insist that the pre-2004 regulations should remain applicable in perpetuity to the roads in Valley View Estates. The plaintiffs had no *fundamental* right to have the Valley View Estates roads grandfathered under the 1962 regulations.

### EQUAL PROTECTION

> The Equal Protection Clause prohibits discrimination by government which neither burdens a fundamental right, targets a suspect's class, or intentionally treats one differently than other similarly situated without any rational basis for the difference.

*TriHealth, Inc. v. Board of Commissioners*, 430 F.3d 783, 788 (6th Cir. 2005).

> A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action is motivated by animus or ill-well.

*Id*.

Plaintiffs contend that Cocke County's refusal to accept the roads in Valley View Estates, when considered in light of the acceptance of the Applewood Estates roads, lacked

12

a rational basis. To make out a viable claim for denial of equal protection, the plaintiffs "must demonstrate that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the County's actions were irrational." *Id*.

Both subdivisons were developed by Ricky Bryant. Although that fact is of no legal significance, it at least supplies background information.

The two subdivisons were developed in roughly the same time period; certainly, whatever temporal difference existed in the development of the two subdivisions is of no consequence.

As he did with respect to Valley View Estates, Bryant failed to do whatever was necessary to bring the roads in Applewood Estates into the county system and, similar to those in Valley View Estates, the roads in Appelwood Estates had deteriorated.

To be sure, there were some differences in the two situations, at least to some extent. As far as Applewood Estates is concerned, a lawsuit had been filed against the County, and the *quid pro quo* for the eventual dismissal of that suit was the County's acceptance of the Applewood Estates roads into the county system.

Also, as defendant points out in its reply brief, the subject roads in Appelwood Estates are approximately one mile in their aggregate length, whereas the length of the subject roads in Valley View Estates is closer to two miles. These differences are minor and of no legal significance.

Defendant argues that the plaintiffs knew, when they purchased their lots in Valley

View Estates, that the roadways were non-public. But the same is true with respect to the owners of lots within Appelwood Estates.

Defendant then argues that the residents of Applewood Estates had specifically contracted with Ricky Bryant that the roads would be developed to conform to the City of Newport's specifications, whereas the contract between Kathy Wood and Mr. Bryant merely provided that Bryant would reasonably maintain the roads until they were accepted into the county system. This indicates, so defendants suggest, that Kathy Wood knew that the possibility existed that the roads in Valley View Estates would never be taken into the county. Respectfully, this is an unwarranted inference. The contract between the residents of Applewood Estates and Ricky Bryant manifested a desire on the part of those people that the Applewood Estates roads would be taken into the county system. Similarly, it is reasonable to infer from Kathy Wood's contract with Bryant that she too desired that the roadways in Valley View Estates would be taken into the county system.

Because of the nature of this case, it is all too easy to treat this matter as a trial on stipulated facts. But it must be remembered that the court is now dealing with the defendants' motion for summary judgment, and if there are any material facts in dispute, or if there are any inferences which can be drawn in plaintiffs' favor which would support a judgment in favor of the plaintiffs, then the motion for summary judgment must be denied. Regarding the plaintiffs' theory of a denial of equal protection, a trial will be necessary.

*IMPLIED DEDICATION OF THE ROADS TO, AND ACCEPTANCE BY, THE COUNTY*

14

A private road can become a public road if the owner of that private road has offered it for public use, and if that offer has been accepted by the government, *Smith v. Black*, 545 S.W.2d 947, 950 (Tenn.App. 1976), either or both of which may be express or implied, *Hackett v. Smith County*, 807 S.W.2d 695, 699 (Tenn.App. 1990). A *dedication* by implication requires "clear and convincing" evidence that the owner or donor intended to dedicate the road to the public, *Sprock v. Bradley*, 1987 WL 5176 (Tenn.App. 1987). There is no requirement for an extraordinary burden of proof regarding acceptance of that offer of dedication by the government, and that acceptance may be shown by either a "formal act" by the governmental authority, or common use by the general public. *Id*.

It is plaintiffs' theory that Cocke County has impliedly accepted the roads within Valley View Estates because at various times officers of the Cocke County Sheriffs Department have used the road in answering calls of some resident of Valley View Estates, and fire trucks likewise have used those road in responding to fires.

Use of private roads by ambulances, law officers, or fire trucks falls far short of evidencing an intent on the part of Cocke County to accept the roads in Valley View Estates as county roads. If use of private roads by emergency vehicles could constitute an acceptance of an offer of dedication of those roads, then the county would be faced with a stark choice of either having roadways forced upon it that it did not want, or instructing emergency vehicles that they could not use the private road to the detriment of the individual requiring those emergency services.

The facts as stated by these parties regarding this particular aspect of plaintiffs' suit

15

fails to provide a sufficient basis upon which the trier of fact could conclude that there was an implied acceptance of the Valley View Estates roadways by Cocke County.

*CONCLUSION*

The defendants' motion for summary judgment is granted with respect to plaintiffs' claim based upon a denial of substantive due process, and with respect to their claim that Cocke County impliedly accepted a dedication of the roadways in Valley View Estates to the County.

However, defendants' motion for summary judgment with respect to plaintiffs' claim based on a denial of equal protection is denied, and a trial will be necessary with respect to that discrete issue or claim.

SO ORDERED:

    s/ Dennis H. Inman    
United States Magistrate Judge
